J-S44032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.K.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  F.H., Mother | : | No. 2778 EDA 2016 |

Appeal from the Order July 21, 2016
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s):  CP-51-AP-0000587-2016;
CP-51-DP-0001111-2013

| | | |
|---|---|---|
| IN THE INTEREST OF:  C.A.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| APPEAL OF:  F.H., Mother | : | No. 2779 EDA 2016 |

Appeal from the Order July 21, 2016
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s):  CP-51-AP-0000588-2016;
CP-51-DP-0001112-2013

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED JULY 31, 2017**

F.H. ("Mother") appeals from the Orders (collectively "the Termination

Orders") granting the Petitions to terminate her parental rights to her

children, C.A.S., born in August 2012, and N.K.S., born in March 2011

(collectively "the Children"), filed by the Philadelphia Department of Human

Services ("DHS"), and changing the Children's permanency goals from reunification to adoption.[1]  We affirm.

The trial court set forth in its Opinion the relevant factual and procedural history underlying this case, which we adopt as though fully set forth herein.  *See* Trial Court Opinion, 2/27/17, at 1-5.[2]

On July 21, 2016, the trial court entered the Termination Orders involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  Mother filed separate, timely Notices of Appeal from the Termination Orders, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In September 2016, this Court, *sua sponte*,

---

[1] By Orders entered on July 21, 2016, the trial court also involuntarily terminated the parental rights of the Children's biological father, R.S. ("Father"), and changed the Children's permanency goals to adoption. Father did not file an appeal and is not a party to the instant appeal.

[2] Since March 2013, the Children have resided with their pre-adoptive foster parents, Mr. and Mrs. G. (collectively "the foster parents").  Mr. G. (hereinafter "foster parent") testified at the termination hearing held on July 21, 2016 (hereinafter "the termination hearing").  At the termination hearing, DHS presented the testimony of the social worker assigned to the family, Stephanie Blanc (hereinafter "social worker").  Mother testified on her own behalf.

consolidated the appeals.[3]

Mother now presents the following issues for our review:

1. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that [Mother] has evidenced a settled purpose of … relinquishing claim to [] [the C]hild[ren,] or has refused or failed to [] perform parental duties[?]

2. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that the incapacity, abuse, neglect or refusal of [Mother] cannot or will not be remedied by the parent[?]

3. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement continue to exist, and termination would best serve the needs and welfare of [] [the Children?]

4. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to

---

[3] We are cognizant of the Pennsylvania Supreme Court's admonishment of this Court in regard to delays in Children's Fast Track cases. **In re T.S.M.**, 71 A.3d 251, 261 n.21 (Pa. 2013) (stating that "[t]he repeated delays in the courts below are not fully explained and are unacceptable. We direct the Superior Court in future cases to ensure that Fast Track cases do not linger, but instead give such cases 'priority in both circulation of and voting on proposed decisions.'" (quoting Superior Court I.O.P. 65.42)). The instant appeals were delayed for panel listing because the trial court sent the certified record to this Court over five months late, after repeated prompts by this Court's staff and President Judge. Further delays ensued due to two requests by DHS for extensions of time to file its appellate brief, which were granted.

> establish[,] by clear and convincing evidence, that termination of [Mother's] parental rights would best serve the needs and welfare of [] [the Children?]

Mother's Brief at 2. Since Mother's issues are closely related, we will address them simultaneously.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; [***In re***] ***R.I.S.***, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, [] 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, [] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As [the Supreme Court] discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not

the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we will focus on section 2511(a)(1) and (b), which provide as follows:

§ **2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

- 5 -

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Concerning the requirements of section 2511(a)(1), this Court has stated as follows:

[] Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for [her] conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of M.R.D.*, 128 A.3d 1249, 1261 (Pa. Super. 2015) (*en banc*) (emphasis and ellipses omitted).

Moreover,

[t]he biological relationship of parent and child does not vest in the parents a property right to the custody of the child. Instead, a parent-child relationship is a status, and one in which the state has an interest to protect the best interest of the child. Maintaining a parent-child relationship requires a continued

- 6 -

interest in the child and a genuine effort to maintain communication and association with the child.

A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. This [C]ourt has repeatedly recognized that parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs.

*Id.* at 1261-62 (citations, quotation marks and ellipses omitted).

Mother argues in her first issue that the trial court abused its discretion in finding that the requirements of subsection 2511(a)(1)[4] had been met, since "the trial court failed to consider [Mother's] explanation for her conduct and … [her] post-abandonment contact with the [C]hildren." Mother's Brief at 6; *see also id.* (detailing Mother's reasons for having failed to complete her parenting objectives and case plan goals, including her purported "numerous medical maladies"). Mother contends that "[a]s to [her] post-abandonment contact with the [C]hildren, the record reveals that [Mother] did participate in visits with [the C]hildren and that those visits went well[,]" and "[Mother] made herself available for the [C]hildren's medical or other appointments." *Id.* at 7.

In its Opinion, the trial court addressed Mother's issue, and determined that DHS had presented clear and convincing evidence that

---

[4] Mother's issues numbered two and three concern subsections 2511(a)(2), (5) and (8), which we need not address. *See In re B.L.W.*, *supra*.

- 7 -

termination of Mother's parental rights to the Children was appropriate under subsection 2511(a)(1). *See* Trial Court Opinion, 2/27/17, at 5-6. The trial court's findings are supported by the record, and we agree with its determination that Mother failed to perform her parental duties for a period of at least six months before DHS's filing of the Termination Petitions. Accordingly, we adopt the trial court's recitation as though fully set forth herein, *see id.*, and affirm on this basis as to Mother's first issue, with the following addendum.

Though Mother alleges on appeal that the trial court failed to consider that her medical issues caused her failure to complete her objectives, the record undermines this claim. Mother testified at the termination hearing that she "gave up" on her objective of compliance with drug and alcohol/dual diagnosis treatment. *See* N.T., 7/21/16, at 72; *see also id.* at 72-73 (wherein Mother explained that she gave up because she was depressed, defeated and "felt attacked"). Mother further conceded that she failed to complete parenting classes, not necessarily due to her alleged maladies, but because of her job, "domestic situations at home," and her role as the caretaker of her disabled mother.[5] *Id.* at 74.

Mother also challenges in her first issue the change of the Children's placement goal to adoption in her Statement of Questions Presented.

---

[5] Though we acknowledge that Mother did provide documentation verifying some of her maladies, she did not offer any proof that they were the cause of her failure to complete her objectives.

However, she does not set forth any argument supporting such a claim in her Argument section. Accordingly, this claim is waived. ***See In re C.R.***, 113 A.3d 328, 336 (Pa. Super. 2015) (stating that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or otherwise fails to develop the issue, that claim is waived); ***see also*** Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities).

Next, we review the termination of Mother's parental rights under section 2511(b), which Mother challenges in her fourth issue. Mother argues that the trial court abused its discretion in finding that termination of her parental rights would best serve the needs and welfare of the Children, where "the record reveals that the Children were bonded with [Mother], and that [M]other did visit with [the C]hildren and that those visits went well." Mother's Brief at 12; ***see also id.*** at 7 (same).

The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the

- 9 -

child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d at 267.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *see also In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008) (stating that although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child."). There is no bond worth preserving between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d at 764. It is appropriate to consider a child's bond with his or her foster parent(s). *See In re T.S.M.*, 71 A.3d at 268.

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). "[W]e will not toll the well-being and permanency of

[a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

The trial court set forth in its Opinion its reasons for determining that termination of Mother's parental rights was warranted under section 2511(b). *See* Trial Court Opinion, 2/27/17, at 7. As the record supports the trial court's factual findings, and we agree with its determination, we affirm on this basis as to Mother's fourth and final issue. *See id.*; *see also In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would have been contrary to the child's best interests, and any bond with the mother would have been fairly attenuated when the child was separated from her, almost constantly, for four years).

Based upon the foregoing, we affirm the Orders terminating Mother's parental rights under section 2511(a)(1) and (b), and changing the Children's permanency goals to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: N.K.S | : | CP-51-DP-00001111-2013 |
| | : | CP-51-AP-0000587-2016 |
| | | |
| IN RE: C.A.S. | : | CP-51-DP-00001112-2013 |
| | : | CP-51-AP-0000588-2016 |
| | : | |
| APPEAL OF: F.H. Mother | : | Superior Court |
| | : | No. 2778 EDA 2016 |
| | : | No. 2779 EDA 2016 |

PROPROTHY

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on July 21, 2016, terminating the parental rights of F████ H████ ("mother"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. Scott Gessner, attorney for Mother, filed a timely appeal from the July 21, 2016 order terminating Mother's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On March 9, 2011, the Department of Human Services ( DHS) received a General Protective Services (GPS) report alleging that N.K.S. and C.A.S.' Mother, was prescribed Oxycodon and Percocet for back pain management after sustaining injuries in two motor vehicle accidents. The report stated Mother ran out or medication and was allegedly prescribed the wrong medication by her medical provider. Mother took a methadone pill prescribed to the children's maternal grandmother to alleviate a severe headache. Mother tested positive for methadone at the time of N.K.S.'s birth on March █ 2011. N.K.S. weighed seven pounds and eight ounces at birth. N.K.S. was ready for discharge on March 10, 2011. The report further alleged Mother was not prepared to care for N.K.S. and had not obtained infant supplies other than a car seat. Mother had traveled to Maine to inquire about the possible adoption of N.K.S. prior to his birth. Mother was still considering placing N.K.S. for adoption. The report was substantiated.

On August █ 2012, DHS received a GPS report alleging that C.A.S. was born at 39 weeks gestation weighing six pounds and eight ounces. Mother tested positive for cocaine and marijuana at the

Circulated 06/27/2017 09:53 AM

time of C.A.S.'s birth. Mother had a history of cocaine use and used cocaine during her pregnancy. Mother admitted to using drugs on a regular basis. Mother admitted to a history of failed attempts to address her drug use and was not receiving drug and alcohol treatment. The report further alleged that Mother admitted to suffering from depression. Mother had received therapeutic services at Warren E. Smith (WES) Health Center and John F. Kennedy Behavioral Health. Mother and Father of the children had a history of domestic violence. Mother received services at WES while she was in a domestic violence shelter. C.A.S. remained at the hospital while DHS investigated the GPS report.

The report also alleged Mother would be discharged on August 6, 2012. Father visited the hospital on August 4, 2012 to sign an acknowledgment of paternity. Mother did not know the level of involvement Father would have in caring for C.A.S. The report further alleged that Mother had two other children. The report alleged N.K.S. resided with Mother. The other child resided with her father. Mother had court ordered visitation with her other child and denied knowing father's address or telephone number. The report was substantiated. On October 10, 2012, DHS implemented In-Home Protective Services (IHPS) through Tabor Children's Services in Mother's home.

In March of 2013, N.K.S. and C.A.S began residing with family friends through a family arrangement. The parties agreed that the children would remain in the home of family friends for two weeks.

On May 23, 2013, DHS held a meeting to discuss the status of the case. DHS learned that Mother had not made any progress with addressing or resolving her drug and alcohol use or her mental health issues. Mother failed to make medical appointment for N.K.S. and C.A.S. The children were still residing in the home of family friends. Mother stated she wanted N.K.S. and C.A.S. to remain with family friends and was willing to cooperate with DHS to officially place N.K.S. and C.A.S. in care.

On May 28, 2013, DHS learned that mother had taken N.K.S and C.A.S. from the home of the family friends for the purpose of a weekend visit arranged by the parties. The arrangement was for N.K.S. and C.A.S. to stay with their Mother from May 24, 2013 until May 26, 2013. Mother did not return N.K.S. and C.A.S. on the specified date and failed to communicate with the caregivers.

On May 28, 2013, DHS obtained an Order of Protective Custody (OPC) for N.K.S.and C.A.S. DHS transported and placed the children in the care of the family friend where they remained.

At the Shelter Care Hearing for N. K.S. and C.A.S. held on May 30, 2013, the Court lifted the OPC and ordered the temporary commitment to DHS to stand. Mother was order to report to the Clinical Evaluation (CEU) for a drug screen and a dual diagnosis assessment. Mother was granted twice-weekly supervised visits at the agency. The Court found Mother was compliant with her drug and alcohol treatment, and that the children were doing well in their placement.

On June 6, 2013, an Adjudicatory Hearing for N.K.S. and C.A.S. was held before the Honorable Vincent L. Johnson. Judge Johnson discharged the temporary commitment to DHS, adjudicated N.K.S. and C.A.S. dependent, and committed them to DHS. Judge Johnson ordered that Mother follow through with the Behavioral Health System (BHS) and her dual diagnosis assessment. Mother was granted twice-weekly supervised visits at the agency, to be modified by agreement of the parties.

2

On August 27, 2013, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Juvenile Master Tammy Langenberg, who ordered the children to remain committed to DHS. Mother was referred to the CEU for a drug screen, a dual diagnosis assessment and three random drug screens prior to the next court date.

On October 22, 2013, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Juvenile Master Tammy Langenberg, who ordered the children remain committed to DHS. Mother was referred to the CEU for a drug screen, a dual diagnosis assessment and three random drug screens prior to the next court date. Mother was order to comply with DHS and all Family Services (FSP) objectives. Mother was to continue attending Achieving Reunification Center (ARC).

At a Review Hearing for N.K.S. and C.A.S. held on March 31, 2014, Juvenile Master Alexis Ciccone ordered the children remain committed to DHS. Mother was referred to CEU for an assessment and a drug screen.

On April 28, 2014, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Master Langenberg, who ordered the children remain committed to DHS. The Court found that Mother had missed three of her scheduled four visits with N.K.S. and C.A.S. since the last court date. Mother was referred to the CEU for a drug screen, a dual diagnosis assessment and monitoring. Mother was ordered to provide a list of her prescribed medication to DHS and CEU. A FSP meeting was ordered to be held prior to the next court date.

On June 16, 2014, a Permanency Review Hearing for N.K.S. and C.A. S. was held before Judge Johnson, who ordered that they remain committed to DHS. Judge Johnson found that Mother had reengaged with ARC and her visits were more frequent. Judge Johnson ordered both parents be referred to the CEU for drug screens.

On September 15, 2014, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Judge Johnson, who ordered that they remain committed to DHS. Mother visits were modified to weekly supervised visits in the community. Mother's visitation remain supervised until she-reengaged in Intensive Outpatient (IOP) treatment. DHS was ordered to evaluate the home of the children's maternal grandmother to ascertain if it was a suitable venue for visitation. Mother was referred to the CEU for a drug screen and monitoring.

On December 15, 2014, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Mater Ciccone, who ordered that N.K.S. and C.A.S. remain committed to DHS. The Court determined Mother was minimally compliant with the permenancy plan. Master Ciccone ordered Mother be referred to the CEU for an assessment, monitoring, drug screen and three random drug screens prior to the next court date. DHS was ordered to arrange visits with Father in prison and to contact his prison counselor.

On December ▓, 2014, Mother gave birth to the children's sibling.

On March 19, 2015, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Judge Johnson, who ordered that N.K.S. and C.A.S. remain committed to DHS.

On May 12, 2015, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Judge Johnson, who ordered that they remain as committed to DHS. The Court found that Mother was attending outpatient drug and alcohol and mental health treatment through the Consortium. The Court ordered Mother's case manager from the Consortium to assist Mother with transitioning to

inpatient treatment. Judge Johnson further found that Father had been released from incarceration. Judge Johnson ordered Mother's visits continue as arranged by the parties.

On December 10, 2015, a Permanency Review Hearing for N.K.S. and C.A.S. was held before Judge Johnson, who ordered the children remain committed to DHS. The Court found Mother was moderately compliant with the permanency plan of reunification with parents. Judge Johnson ordered that Mother be granted twice weekly supervised visits as arranged by the parties. Mother was referred to the CEU for a dual diagnosis assessment, monitoring, and weekly drug screens. The Court found that Mother had been receiving mental health service through Community Council until July 2015, when her medical insurance was denied. Mother failed to attend the hearing.

On February 18, 2016, a Permanency Review Hearing for N.K.S. and C.A.S. was held before the Honorable Lyris F. Younge, who ordered the children remain committed to DHS. Judge Younge found Mother was minimally compliant with the permanency plan and Father was non-compliant with the permanency plan. The Court found the concurrent permanency plan for N.K.S. and C.A.S. to be adoption. Judge Younge ordered Mother to be re-referred to the CEU for an immediate drug screen, a dual diagnosis assessment, monitoring, and weekly random drug screens. The Court ordered Mother to comply with all treatment recommendations, weekly supervised and unsupervised visits with the children. Mother failed to attend the hearing.

On May 16, 2016 CUA visited Mother at her home. Mother's CUA progress report stated Mother was referred to ARC for drug and alcohol treatment, individual therapy, and parenting education classes. The report stated Mother was terminated from the program for lack of attendance. Mother initially stated that her inconsistent attendance was because her health was poor, because she was caring for her newborn, and because the children's maternal grandmother was ill. The report stated Mother was ordered to participate in weekly drug screens at the CEU, and to reactivate her medical insurance so that she could enroll in drug and alcohol and mental health treatment. As of week of May 9, 2016, Mother medical insurance remained inactive. Mother had failed to attend several appointments at STOP. Mother had not reported to the CEU for weekly drug screens as ordered on February 18, 2016.

On May 17, 2016, a Permanency Review hearing for N.K.S. and C.A.S. was held before Judge Younge, who ordered that they remain as committed to DHS. The Court ordered Mother's visits be suspended until further order of the Court based on her minimal compliance with the permanency plan throughout the life of the case. Mother failed to attend the hearing.

On May 18, 2016 DHS received allegations Mother was not meeting the medical needs of her newborn, who had remained in Mother's care since birth. It was alleged that Mother missed multiple medical appointments for her newborn in December 2015, January 2016, and April 2016. The newborn missed his scheduled 12-month, 15 month, and 18-month well child medical visits. Mother stated she was unable to take the newborn to his scheduled medical appointments because she is in poor health, can "barely walk" and was immobile.

The matter was the listed on a regular basis before judges of the Philadelphia Court of Common Pleas-Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of determining and reviewing the permanency plan of the child.

4

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On July 21, 2016, during the Termination of Parental Rights Hearing for Mother, the Court found by clear and convincing evidence that mother's parental rights as to N.K.S. and C.A.S., should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

## Discussion

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, Mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.,* 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the children. The Court found by clear and convincing evidence that the mother failed to perform her parental duties.

Testimony of the social worker stated unsupervised visits were changed by the Court to supervised visits approximately six months prior to the termination of parental rights hearing. (N.T. 7/21/16, pgs. 47-48) Social worker testified there were allegations Mother physically hit N.K.S. and C.A.S. ( N.T. 7/21/16, pg. 48) Testimony of the foster parent stated N.K.S. returned from a visit with his Mother and divulged he was physically abused. (N.T. 7/21/16, pg. 93) Foster parent testified C.A.S. returned from a visit visibly upset. (N.T. 7/21/16, pgs. 90-91) Testimony of foster parent stated Mother's response to questions about physical harm of the children was " spare the rod, spoil the child". (N.T. 7/21/16, pg. 93) Furthermore, foster parent testified N.K.S. and C.A.S. stated they did not feel comfortable going to Mother's home for visits. (N.T. 7/21/16, pg. 64) Testimony of foster parent was Mother was selective about which child she would visit with each visit. (N.T. 7/21/16, pg. 91-93) There were visits where Mother indicated to foster parent she did not feel up to handling C.A.S. for a visit (N.T. 7/21/16, pg. 92)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult

5

circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

There were single case plan goals established by DHS to assist Mother with reunification with N.KS. and C.AS. (N.T. 7/21/16, pg. 41) The goals were visitation, mental health therapy and drug and alcohol program and parenting. (N.T. 7/21/16, pg. 41) Mother did not comply with her single case plan goals towards reunification with N.K.S. and C.AS. (N.T. 7/21/16, pg. 48) The social worker stated concern about Mother's struggle with dual diagnosis issues. (N.T. 7/21/16, pg. 46) Mother did not successfully complete ARC program for parenting as she was discharged for inactivity. (N.T. 7/21/16, pgs. 41-42) Mother failed to complete the second program at Northeast Treatment Center. (N.T. 7/21/16, pg. 42) Testimony of social worker revealed Mother failed to complete any parenting objectives through any program provider. (N.T. 7/21/16, pg. 43) Furthermore, social worker testified Mother had not received any mental health therapy for over a year. (N.T. 7/21/16, page 46) Mother testified and admitted being aware of her failure to complete the single case plan objectives for reunification with N.K.S. and C.A.S. (N.T. 7/21/16, pg. 69-71) Mother stated she did not complete drug and alcohol treatment because of depression. (N.T. 7/21/16, pg. 72-73) Mother testified and admitted she did not complete any of her parenting courses. (N.T. 7/21/16, pg. 74)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

§2511 (a)(5) requires that :

> (5)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

6

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate mother's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000).

In the present matter, N.K.S. and C.A.S. have been in DHS care for over forty eight (48) months, well beyond the statutory provision of 15 to 22 months (N.T. 7/21/16, pg. 106) N.K.S. and C.AS. have been in placement with their current foster parents for forty nine (49) months. (N.T. 7/21/16, pg. 54) The children have a parent-child bond relationship with their foster parents. (N.T. 7/21/16, pg. 52) Social worker stated N.K.S. and C.A.S.' daily, medical and educational needs were being met by their foster parents. (N.T. 7/21/16, pgs. 51-52) Furthermore, social worker's testimony stated the children would not suffer any detrimental impact, nor irreparable harm, if their Mother's parental rights were terminated. (N.T. 7/21/16, pg. 51)

Social worker testified N.K.S. and C.A.S. did not respond negatively to Mother's suspended visits. (N.T. 7/21/16, pg. 50) Testimony of the social worker stated N.K.S. and C.A.S. did not ask about their Mother after the suspension of visits (N.T. 7/21/16, pg. 50) The Court found convincing the testimony that the children indicated they would be fine in their current placement with the foster parents. (N.T. 7/21/16, pg. 109) Hence, the Court concluded the children would not suffer irreparable harm. (N.T. 7/21/16, pg. 109).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children to change their goal to adoption (N.T. 7/21/16, pg. 108)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause N.K.S. and C.A.S. to suffer irreparable harm and it is in the best interest of the children based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate Mother's parental rights.

7

Accordingly, the Trial Court's Order entered on July 21, 2016, terminating the parental rights of mother, F███ H███, should be properly affirmed.

By the Court

J.

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: N.K.S                    :       CP-51-DP-00001111-2013
                                         :       CP-51-AP-0000587-2016

IN RE: C.A.S.                :       CP-51-DP-00001112-2013
                                           :       CP-51-AP-0000588-2016

                                           :

APPEAL OF: F.H.  Mother       :       Superior Court
                                           :       No. 2778 EDA 2016
                                           :       No. 2779 EDA 2016

---

## PROOF OF SERVICE

I hereby certify that this court is serving, today February 27 2017 the foregoing Opinion, by regular mail, upon the following person(s):

A. Bennette Harrison, Esquire
City of Philadelphia
Law Department
1515 Arch Street. FL 15
Philadelphia, PA 19102

Cynthia Keller, Esquire
City of Philadelphia
Law Department
1515 Arch Street. FL 15
Philadelphia, PA 19102

Maureen Pie, Esq.
8 Summit St.
Philadelphia, PA 19118
Philadelphia County

By the Court

_____
J.